**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Jonathan Garcia,

                Plaintiff,

        v.

North Chicago Police Officer
Muhammad Alka, Star #49; North
Chicago Police Officer James Ramirez,
Star #12; North Chicago Police Officer
Marc Keske, Star #58; North Chicago
Police Officer Gary Grayer, Star
#1848; and North Chicago Police
Officer Steven Roberts, Individually
and as Employees/Agents of the City of
North Chicago; and the City of North
Chicago,

                Defendants.

No. 19 CV 5831

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

In addition to thirteen motions in limine addressed by the Court in a separate order, [ECF No. 98], the parties also have briefed two other pretrial motions on which the Court must rule in anticipation of the pretrial conferences currently set for February 1, 2022 and February 7, 2022. Trial on all of Plaintiff's claims, including the *Monell* claim, is scheduled to begin on March 7, 2022. The Court addresses each motion in turn.

**PLAINTIFF'S MOTION FOR SPOILATION INSTRUCTION**

Plaintiff's Motion for a Spoilation of Evidence Instruction [ECF No. 74] asks this Court to give Seventh Circuit Civil Pattern Instruction 1.20 to the jury at the

close of evidence. This instruction is warranted, in Plaintiff's view, because Defendants failed to preserve certain Response to Resistance Reports completed by two individual Defendant Officers – Officers Alka and Ramirez – concerning their use of force during the incident at the heart of this litigation. Plaintiff asserts that Defendants had a duty to preserve those reports because litigation involving Plaintiff was foreseeable and the North Chicago Police Department's own policies require that those documents be retained. Because Defendants breached that duty and acted willfully or in bad faith, Plaintiff says, the jury should be given Instruction 1.20 to ameliorate the prejudice he suffered because he could not review the contents of the reports.

Defendants do not dispute that the Response to Resistance Reports Plaintiff sought in discovery existed at one time but have since been lost or destroyed. Notwithstanding that fact, Defendants counter that giving Seventh Circuit Pattern Instruction 1.20 would not be appropriate in this case because Plaintiff has failed to make the threshold showing that Defendants acted willfully or in bad faith specifically required by Seventh Circuit precedent. The Court agrees with Defendants for the reasons explained below.

Instruction 1.20, which targets the spoliation of evidence, is intended to provide the jury with a framework for drawing an adverse inference from missing evidence, consistent with the law in the Seventh Circuit and Federal Rule of Civil Procedure 37. In general, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending

or reasonably foreseeable litigation." *Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 521, 529 (E.D. Pa. 2010). Spoilation occurs when the destroyed or lost evidence was in the opposing party's custody or control, is relevant to the claims or defenses in the case, was destroyed for the purpose of hiding adverse information, and the opposing party had a duty to preserve the evidence. *Faas v. Sears, Roebuck & Co.,* 532 F.3d 633, 644 (7th Cir. 2008); *Lewis v. McLean*, 941 F.3d 886, 892 (7th Cir. 2019). In the Seventh Circuit, when a party intentionally destroys evidence in bad faith, the judge may instruct the jury to infer the evidence was incriminating to that party. *Faas,* 532 F.3d at 644. "The crucial element is not that evidence was destroyed but rather the reason for the destruction.'" *S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.,* 695 F.2d 253, 258 (7th Cir. 1982). In that respect, bad faith, intentional conduct is a "prerequisite to imposing sanctions for the destruction of evidence," *LaSalvia v. City of Evanston*, 2011 WL 5867967, at \*3 (N.D. Ill. 2011), where "bad faith" means that the evidence was destroyed for the purpose of hiding adverse information. *Faas,* 532 F.3d at 644; *see also, Everett v. Cook Cty.,* 655 F.3d 723, 727 (7th Cir. 2011); *Rummery v. Ill. Bell Tel. Co.,* 250 F.3d 553, 558 (7th Cir. 2001).

Although the record evidence shows that Defendants had the Response to Resistance Reports in their possession and control at one time, may have had a duty to preserve those reports in anticipation of litigation with Plaintiff, and that the reports have since been destroyed, misplaced, or lost, Plaintiff's request for an adverse spoilation instruction falters because he has not set forth any facts that

3

suggest Defendants intentionally destroyed the reports in bad faith. Plaintiff bears the burden, as the party requesting a sanction pursuant to Rule 37 in the form of an adverse inference jury instruction, of making at least a threshold showing of an intentional, bad faith act to support the giving of the proposed instruction. And Plaintiff has not done so here. Instead, the facts Plaintiff has put forth show only that Defendant Officers Alka and Ramirez generated the reports on the date of the incident (which could, converse to Plaintiff's position, be construed as an attempt to preserve the information in the first instance), that the reports could not be located by Defendants and the North Chicago Police Department during the course of discovery, and that they are now presumed lost, destroyed, or misplaced. There is a complete absence of competent evidence about what happened to the reports, including whether they were destroyed by a "human, [machine], or Mother Nature herself." *LaSalvia,* 2011 WL 5867967, at \*4. This leaves the Court with no more than mere speculation to substantiate an adverse evidence instruction that, at its core, is a sanction for destructive action undertaken to hide the truth or purposely keep damaging evidence out of the hands of an opposing party. *See, e.g., Bentz v. Lindenberg,* 854 F. App'x 55, 58 (7th Cir. 2021); *Gabryszak v. Aurora Bull Dog Co.,* 427 F. Supp. 3d 994, 1004 (N.D. Ill. 2019); *Bracey v. Grondin,* 712 F.3d 1012, 1020 (7th Cir. 2013) ("[s]imply establishing a duty to preserve evidence or even the negligent destruction of evidence does not automatically entitle a litigant to an adverse inference instruction in this circuit."); *Faas*, 532 F.3d at 645. Under these facts, it would not be appropriate, proportional, or consistent with well-established

4

case law to impose an adverse inference sanction without any showing by Plaintiff that Defendants acted with the requisite intent.

Similarly, the record does not suggest to the Court that the reports were destroyed "for the purpose of hiding adverse information." *Faas,* 532 F.3d at 644. As Defendants state in their response, the factual information requested by the Response to Resistance Reports also is contained in other police documents, albeit not conveniently aggregated into one, subject-specific report that addresses the use of force by each individual officer. [ECF No. 75] at 2–3.The booking room video footage, which Defendants turned over to Plaintiff during discovery, also purportedly captures the incident itself and will likely illuminate the who, what, where, and how of the officers' use of force that would have been the subject of the now-missing reports. Given the volume of related evidence Defendants did preserve and provide to Plaintiff, Court cannot infer from Defendants' actions that they acted with the intent to hide unfavorable information by purportedly destroying the two isolated reports at issue here.

In an attempt to circumvent the threshold showing of bad faith clearly required by Seventh Circuit precedent,[1] Plaintiff suggests in a footnote that the Court should

---

[1] Nor is the Seventh Circuit alone in requiring a threshold showing of facts supporting an inference of bad faith or intentional destruction of evidence. *See, e.g., Sharp v. Hylas Yachts, LLC,* 872 F.3d 31 (1st Cir. 2017) (requiring a finding of bad faith); *Bull v. United Parcel Serv., Inc.,* 665 F.3d 68 (3d Cir. 2012) (same); *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008) (an adverse inference requires a showing that the party "knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction"); Guzman v. Jones, 804 F.3d 707, 713 (5th Cir. 2015) (requiring "bad faith" or "bad conduct")*; Hallmark Cards, Inc. v. Murley,* 703 F.3d 456, 461 (8th Cir. 2013) ("Taking into consideration the gravity of an adverse inference instruction, which 'brands one party as a bad actor,' we conclude that a district court must issue explicit findings of bad faith and prejudice prior to

5

modify instruction 1.20 and instruct the jury that they may draw an adverse inference if Defendants were "at fault" for the destruction of the reports or acted recklessly in failing to preserve them. [ECF No. 74] at 7 n.1, 10–11. Yet Plaintiff cites no relevant case law in support of this request, save for one forty-five-year-old Supreme Court case generally addressing what sanctions may be available for a party's failure to timely answer written interrogatories under then-existing Rule 37. [ECF No. 74] at 10 (citing *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640 (1976)). Suffice it to say, this Court believes amending Pattern Instruction 1.20 to include an "at fault" or "reckless" standard would contradict the law of this circuit and this Court's own interpretation of Rules 37(c) and 37(e). It may be that some lesser sanction would be appropriate under Rule 37 for a party who was simply "at fault" for the destruction of evidence, but the specific relief Plaintiff seeks here – an adverse instruction sanction – should only be imposed on a party as a consequence of a bad faith, intentional act.

On that point, Rule 37 has repeatedly been amended since the Supreme Court ruled in *National Hockey League* in 1976, in part to codify common law spoliation

---

delivering an adverse inference instruction.") (quoting *Morris v. Union Pac. R.R.,* 373 F.3d 896, 900 (8th Cir. 2004)); *Equal Emp. Opportunity Comm'n v. JetStream Ground Servs., Inc.,* 878 F.3d 960, 965 (10th Cir. 2017) (requiring a finding of bad faith); *c.f. Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 108 (2d Cir. 2002) (rejecting the majority standard of bad faith or intentional conduct and instead requiring only a "culpable state of mind" for an adverse inference instruction, which may, in some circumstances, be satisfied by a showing of negligence); *Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.,* 502 F. App'x 523, 532 (6th Cir. 2012) (same); *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993) ("a finding of 'bad faith' is not a prerequisite to [an adverse inference instruction]…Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'") (quoting *Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991)).

principles in the context of electronic discovery. The plain language and intent of Rule 37(e), amended as recently as 2015, further support the Court's conclusion that the adverse instruction sanction Plaintiff requests here requires a finding of bad faith or intent. Rule 37(e) provides that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court… only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may… instruct the jury that it may or must presume the information was unfavorable to the party." FED.R.CIV.P 37(e)(2)(B). Clearly, then, a finding of intent or bad faith is specifically required in the context of electronic discovery – and the Court can extrapolate that the same is true of a handwritten police report preserved in an electronic database maintained by the North Chicago Police Department. Indeed, the Advisory Committee's comments make the Court's interpretation all but explicit: "Subdivision (e)(2). This subdivision authorizes courts to use specified and very severe measures to address or deter failures to preserve electronically stored information, but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation. It is designed to provide a uniform standard in federal court for use of these serious measures when addressing failure to preserve electronically stored information. It rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence

7

or gross negligence. Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have. The better rule for the negligent or grossly negligent loss of electronically stored information is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction." FED.R.CIV.P. 37 (advisory committee note to the 2015 amendment).

Finally, the Court rejects Defendants' argument of last resort that if Plaintiff is entitled to a spoilation instruction regarding the missing reports, they should be entitled to the same instruction for a cell phone video Plaintiff allegedly took during the traffic stop in question. This argument is without merit for the same reasons discussed above: a failure to show an intentional, bad faith act by Plaintiff resulting in the destruction of that evidence.

For all the reasons stated above, the Court denies Plaintiff's Motion for a Spoilation of Evidence Instruction [ECF No. 74].

## DEFENDANTS' MOTION TO LIMIT CERTAIN MEDICAL TREATER OPINIONS AND TESTIMONY

Plaintiff disclosed six medical treaters to Defendants pursuant to Federal Rule of Civil Procedure 26(a)(2): Carolyn Parker, MA, MS, NCC, LPC, Christine Spuhler, LCSW (who works in the same office as Carolyn Parker), Juan F. Madrazo Torres, PsyD., Bruce Yanofsky, PhD.,[2] Dr. Steven Hodges, and Dr. Lea Wrobel. Defendants' Amended Motion in Limine to Limit Certain Medical Opinions and Testimony [ECF No. 81] asks this Court to circumscribe testimony from the above-identified experts about the permanency of Plaintiff's injuries. Plaintiff responded that he "does not anticipate any treaters offering opinions regarding permanency of [his] PTSD," rendering Defendants' Motion moot in all but one respect, which the Court briefly addresses below. [ECF No. 88] at 2.

In his response to Defendants' Motion, Plaintiff signaled his intention to elicit testimony from Dr. Torres "regarding the nature and purpose of behavioral therapies, specifically Cognitive Behavioral Therapy (CBT) and Eye Movement Desensitization and Reprocessing Therapy (EMDR), that address the continuing nature of PTSD symptoms. (Id.). Dr. Torres should be allowed to fully explain how these various therapies treat PTSD symptoms, including the fact that symptoms do not simply disappear overnight." [ECF No. 88] at 2–3. In the Court's view, this proffered testimony has the potential to impermissibly cross the line from lay to expert testimony, meaning it would need to conform to the requirements of Federal Rule of

---

[2] Plaintiff has disclaimed any intention of offering Dr. Yanofsky's testimony at trial, as he was disclosed in error. [ECF No. 88] at 2 n.1.

Evidence 702 and the constraints of *Daubert*. Under Rule 701, the Court will allow any medical treater properly identified above to testify about his or her observations, diagnosis, and treatment of Plaintiff – "what he saw and did and why he did it" – as long as that testimony is based on his or her personal knowledge and was not acquired or developed in anticipation of trial. *Krischel v. Hennessy,* 533 F. Supp. 2d 790, 795 (N.D. Ill. 2008); *Richardson v. Consolidated Rail Corp.,* 17 F.3d 213, 218 (7th Cir. 1994). The Court cautions Plaintiff, however, that testimony from Dr. Torres that is based on theoretical or hypothetical matters – such as an exegesis about the "nature and purpose of behavioral therapies" available to treat PTSD – as opposed to Dr. Torres' experience of treating Plaintiff does not conform to the requirements of Rules 701 and 702 and therefore will not be permitted. The reliability requirements set forth in Rule 702 cannot "be evaded through the simple expedient of proffering an expert in lay witness clothing." FED.R.EVID. 701 (advisory committee note to the 2000 amendment). Dr. Torres – or any treating physician, for that matter – must therefore confine his testimony to the boundaries of Rule 701.

For the reasons discussed above, Defendants' Amended Motion in Limine to Limit Certain Medical Opinions and Testimony [ECF No. 81] is granted in part and denied in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   January 20, 2022